IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO. 1:16-CV-00973-MSK-NYW

VISTA POINTE TOWNHOME ASSOCIATION, INC.

    Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY

    Defendant.

## PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

COMES NOW, Plaintiff, Vista Pointe Townhome Association, Inc., ("Vista Pointe"), by and through its undersigned counsel, and submits Vista Pointe's combined response and memorandum in support to the Order to Show Cause, and states as follows:

### INTRODUCTION AND SUMMARY

On October 23, 217, the Court issued an Order to Show Cause "as to why this action should not be dismissed for lack of jurisdiction." [D.E. 34]. Plaintiff seeks relief for breach of contract, bad faith breach of insurance contract, and unreasonable delay and/or denial of insurance coverage. This action was brought to the Court's diversity jurisdiction. Such jurisdiction is satisfied as the parties are citizens of different states and the amount in question is over $75,000.00. Furthermore, at the time suit was filed, Defendant Auto-Owners Insurance Company, ("Defendant" or "Auto-Owners"), had already breached the contract, and unreasonably delayed payment of policy proceeds in violation of Colorado law. Plaintiff sought the appraisal process not to resolve the

1

breach of contract dispute, but instead to establish a binding amount of damages. The appraisal process does not deprive the Court of jurisdiction or otherwise render Plaintiff's claims unripe. The injuries complained of in Vista Pointe's complaint are actual, concrete, and capable of redress by this Court, and Vista Pointe's standing is clear on all causes of action. *See* Colo. Rev. Stat. §§ 10-3-1115 and -1116. Therefore, Plaintiff requests the Court to exercise its jurisdiction.

To clarify a potential misapprehension of the appraisal process, Vista Pointe states it was not invoked to function as an arbitration, and it was not intended to adjudicate the dispute between the parties. The appraisal process was invoked in order to establish the amount of damages caused by Defendant's breach of the policy and their unreasonable denial and delay. An appraisal award is admissible in a party's bad faith case. *Tae Hyung Lim v. Am. Econ. Ins. Co.*, No. 13-cv-02063, 2014 WL 1464400, (D. Colo. Sept. 10, 2015).

The record is rife with examples of Defendant's unreasonable delay and denial of coverage and clear, actionable breach of contract. Vista Pointe has suffered an injury based on Defendant's actions that is concrete, particularized, and actual. Vista Pointe's injury is directly traceable to Defendant's actions. Additionally, Vista Pointe's injury will be properly redressed by the relief requested. These injuries all occurred prior to the filing of this litigation. Finally, the policy contains a contractual limitations period of two years from the "date on which the direct physical loss or damage occurred." This means that suit under the contract would have been barred on September 29, 2016. Suit had to be filed before that date in order to preserve the contractual limitations period, and if suit were to be dismissed, it would raise an issue of statute of limitations. To delay this action from moving forward would potentially deny Vista Pointe any remedy at all, and as such is against equity. For these reasons, Vista Pointe would show it has standing and that

the Court has jurisdiction to hear this action and should properly exercise that jurisdiction in resolving the show cause order.

## BACKGROUND

Vista Pointe Townhome Association, Inc. is a nonprofit corporation formed under the law of Colorado in March 1997.[1]  Vista Pointe is based in Denver, Colorado.[2]  Auto-Owners Insurance Company is Michigan company.[3]  Defendant is based in Lansing, Michigan.[4]  On March 13, 2014, Vista Pointe obtained a property insurance policy, # 134632-74061072-14, covering the term of March 2014 to March 2015, (the "Policy"), from Defendant.[5]  The Policy specifically included coverage for "wind/hail" events.[6]  A dispute under the Policy exists as to coverage amounts for a hail event with damage amounts over $75,000.00. [D.E. 1].

The Vista Pointe Townhomes are an eleven-building residential community on the southwest side of the Denver metro-plex.[7]  On September 29, 2014, an afternoon hail storm inflicted significant damage on the Vista Pointe Townhomes.[8]  Reported hail included stones between 1 ¾ to 2 ¼ inches in diameter in the vicinity of Vista Pointe.[9]  This storm was responsible for widespread damage to the buildings' roofing systems.[10]  This injury was "property damage" to "covered property" as defined by the Policy.[11]  The claim was appropriately reported on October

---

[1] *See* Ex. A, Certificate of Fact of Good Standing of Vista Pointe Townhome Association, Inc.
[2] *See* Ex. B, Auto-Owners Policy No. 134632-74061072-14 at AO POL 000001.
[3] *See* Ex. C, Auto-Owners Certificate of Existence.
[4] *See* Ex. B at AO POL 000001.
[5] *Id*. at AO POL 000001.
[6] *Id*. at 000006.
[7] *See* Ex. D, Iris Engineering Report, p. 1.
[8] *Id*. at 1.
[9] *Id*. at 1.
[10] *Id*. at 1.
[11] *See* Ex. B at AO POL 000143, 000157.

14, 2014 by Pete Ridulfo, Public Adjuster.[12] On October 19, 2014 Auto-Owners' chosen adjuster inspected the loss and on November 5, 2014 issued estimates which valued the damages at $440,403.83 ($270,703 ACV, $10,000 deductible.).[13] Following that valuation and upon request by Auto-Owners, on November 13, 2014 Vista Pointe submitted a sworn Proof of Loss for those amounts.[14] No payment was issued after receipt of that proof of loss. Pursuant to the Policy, Defendant's response was due within 30-days of receipt of the sworn proof of loss.[15]

On February 25, 2015 Defendant (through counsel) sent a letter stating that it could not accept the proof of loss because it "was not accompanied by any engineering or consultant report which sets forth the cause of this claimed loss and the date of the claimed loss."[16, 17] The valuation included in the Proof of Loss set forth the claimed date of loss, and was based on Owners' own adjuster's conclusions and findings.[18] The Policy has no such requirement.

An engineer finally inspected the property on behalf of the Defendant, and issued its report on July 17, 2015, over 9 months after the Defendant received the proof of loss (more unreasonable delay).[19] The engineer found widespread damages as a result of the September 2014 storm event, and noted that it caused "significantly more damages than the 2012 storm."[20] However, even after receiving this report in July 2015, payment still did not issue until two months later on September

---

[12] *See* Ex. E, letter of representation from Peter Ridulfo to Auto-Owners dated October 14, 2014.
[13] *See* Ex. F, United Claims Service Estimates.
[14] *See* Ex. G, Vista Pointe's Sworn Proof of Loss dated November 13, 2014.
[15] *See* Ex. B at AO POL 000121.
[16] This is a breach of the insurance contract. The policy does not require the policy-holder to provide engineering reports or consultant reports. This is also a misrepresentation of the policy's requirements.
[17] *See* Ex. H, Letter from counsel for Auto-Owners to Peter Ridulfo and Kenneth Anderson dated February 26, 2015, p. 2.
[18] *See* Exhibit G.
[19] *See* Ex. D.
[20] *Id*. at 1-2.

1, 2015.[21] That payment amount was for $256,439.77, which is not quite $4,000 less than what was determined to be owed by Defendant's own adjuster. This means that Owners delayed payment for nearly one full year in order to save less than $4,000. The Policy itself anticipates payment being made within 30-days in appropriate circumstances.[22] That is patently unreasonable delay.

Moreover, the scope and cost identified by Defendant's adjuster was still insufficient to fully address the damages caused by the storm event. On September 3, 2015, following the late payment of the undisputed amount, Vista Pointe submitted to Defendant a repair estimate from Edge Construction that totaled $869,763.34.[23] This is evidence that Defendant did not conduct a full and thorough evaluation of Plaintiff's claim, which is further breach and unreasonable delay/denial of the additional benefits owed.

It was based on these unreasonable delays on the part of Defendant and the breaches of the insurance contract by Defendant, that forced Vista Pointe to file suit. On April 29, 2016, Vista Pointe filed this action pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1). [D.E. 1]. At that time, Vista Pointe moved to stay the case and compel the appraisal process. [D.E. 1]. The purpose of the invocation was to at least bind the parties to the amount of the loss so that that issue would not have to be tried. The Court administratively closed the case on June 9, 2016. [D.E. 18]. The Court's Minute Order specifically stated the case may be reopened "if before the passage of 90 days, there is a request to appoint an umpire under the appraisal provision of your contract." [D.E. 18]. The parties attempted to implement the appraisal process, but were unable

---

[21] *See* Ex. I, Claim Payment from Auto-Owners to Vista Pointe dated September 1, 2015.
[22] *See* Ex. B at AO POL 000121-122.
[23] *See* Ex. J, Edge Construction, LLC's Estimate dated September 23, 2015.

to agree to appointment of an umpire. [*See* D.E. 28]. Thereafter, Vista Pointe filed a motion to reopen the case, and for the Court to appoint an umpire. [D.E. 28]. The Court has granted that motion in part, and issued an Order to Show Cause as to the Court's jurisdiction. [D.E. 34].

## ARGUMENT

### A. The Court has diversity jurisdiction over this action

Vista Pointe's claims are based on an injury in fact that existed at the time the action was commenced and should be allowed to proceed in this Court. "Federal courts are courts of limited jurisdiction…which is not to be expanded upon by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994) (internal citations omitted). Vista Pointe has asserted that this Court has diversity jurisdiction. [D.E. 1]. Diversity jurisdiction is governed by 28 U.S.C. § 1332(a), which provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between ... (1) citizens of different states; [or] (2) citizens of a State and citizens of a foreign state." There has been no challenge to fact that the controversy exceeds the sum of $75,000.00 and is between citizens of different states.[24]

When a suit is based on diversity jurisdiction, the parties must be completely diverse, in other words, no plaintiff can be a citizen of the same state as any defendant. *Ravenswood Inv. Co. v. Avalon Corr. Servs.,* 651 F.3d 1219, 1223 (10th Cir. 2011). A corporation is considered to be a citizen of (i) every state where it is incorporated and (ii) the state where it has its principal place of business, (its "nerve center"). 28 U.S.C. § 1332(c)(1); *Johnson v. SmithKline Beecham Corp.,*

---

[24] For example, during the Rule 16 Hearing on June 9, 2016, Auto-Owners counsel acknowledged that Auto-Owners is incorporated in Michigan and its principal place of business is in Michigan. [Reporter's Transcript Rule 16 Hearing, June 9, 2016, 3:18-22].

724 F.3d 337, 347 (3d Cir. 2013). A corporation's nerve center or principal place of business is the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010). For Vista Pointe, both its state of incorporation and the state where it keeps its nerve center is Colorado. On the other side of this action, Defendant is incorporated in Michigan and is headquartered in that state's capital, Lansing. No one has challenged the principal place of business for either Vista Pointe or Defendant, and diversity of citizenship is an undisputed fact.

The second step in properly invoking diversity jurisdiction, is an allegation by Plaintiff of facts showing that the amount in controversy exceeds $75,000.00, excluding interest and costs. 28 U.S.C. § 1332(a). Unless the law provides otherwise, the amount claimed by a plaintiff controls the claim if that claim is apparently made in good faith. *St. Paul Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288-289 (1938). "A plaintiff's allegations in the complaint alone can be sufficient to make this showing." *Adams v. Reliance Standard Life Ins. Co.,* 225 F.3d 1179, 1183 (10th Cir. 2000). Vista Pointe alleged in its complaint that the damages are over $75,000.00. [D.E. 1]. Therefore, the complaint alone should be enough to establish this Court's diversity jurisdiction.

To the extent more discussion is needed at this point, however, Vista Pointe would submit that there is ample evidence, even without completion of the appraisal process that show that diversity jurisdiction has been appropriately invoked. Vista Pointe's independent evaluation of damage sustained from the September 2014 hail event shows an injury of over $850,000.00. Of that, Defendants have paid slightly more than $250,000.00. If the Court has doubts regarding the amount in controversy or the diversity of the parties, Vista Pointe requests the opportunity to prove up the matter by presenting facts either in deposition or an evidentiary hearing. *See Suber v.*

*Chrysler Corp.,* 104 F.3d 578, 583-584 (3rd Cir. 1997). Even if the Defendant "wins" the appraisal process and the award matches what the Defendant has already paid, the undisputed one year delay in payment of that amount results in a compelling case for two times the amount already paid (which would be in excess of $500,000) pursuant to Colo. Rev. Stat. §§ 10-3-1115 and -1116.

**B. Plaintiff has standing to pursue its breach of contract claim, including the bad faith breach of contract, and this Court has jurisdiction to hear that claim**

The Court has expressed a concern that there was "no ripe breach of contract claim at the time this action was commenced." [D.E. 34, p. 5]. However, the Court's concern is unwarranted, as under Colorado law, all of Vista Pointe's causes of action had fully accrued at the time this action was filed. When jurisdiction is based on the parties' diverse citizenship, a federal court must assess state law claims based on the substantive law of the state. *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014). The Court's objective when interpreting and applying state substantive law is to reach the same result that would be reached in state court. *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1204 (10th Cir. 2011). If the state's highest court has interpreted a state statute, a district court should defer to that decision. *See Long v. St. Paul Fire & Marine Ins. Co.*, 589 F.3d 1075, 1081 (10th Cir. 2009). If the state's highest court has not interpreted a state statute, a district court will instead predict how that court would rule. *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1093 (10th Cir. 2010).

"When interpreting a state statute in a diversity case, this court must apply state rules of statutory construction." *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 573 F.3d 997, 1001 (10th Cir. 2009). Under Colorado law, the "primary task in construing a statute is to give effect to the intent of the General Assembly," which requires courts to "look first to the plain language of the

8

statute." *Farmers Grp., Inc. v. Williams*, 805 P.2d 419, 422 (Colo. 1991); *see* Colo. Rev. Stat. § 2-4-212. "[A] statute must be read and considered as a whole. Where possible, the statute should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts." *People v. Dist. Court*, 713 P.2d 918, 921 (Colo. 1986) (citation omitted); *see* Colo. Rev. Stat. § 2-4-101.

Vista Pointe has met all elements of standing. To satisfy Article III's standing requirements, a plaintiff must show "injury in fact, causation, and redressability." *Lujan v. Defendants of Wildlife,* 504 U.S. 555, 560-561 (1992); *see also Tennille v. W. Union Co.,* 809 F.3d 555, 560 (10th Cir. 2015); *D.L. v. Unified School Dist. No. 497,* 392 F.3d 1223, 1232 (10th Cir. 2004). The Court has expressed concern that Vista Pointe has not met the first element of standing – that it has not shown an injury prior to the filing to this action. While it is true that fear of an event that may occur in the future would be merely speculative and not enough to support standing, *see Los Angeles v. Lyons,* 461 U.S. 95 (1983), here, however, we have distinct (in)action by Defendant prior to filing suit that was in breach of the insurance contract. Invocation of a contract provision providing appraisal does not invalidate or otherwise ameliorate those prior breaches. Additionally, the prior breaches show a pattern of continuous and pervasive acts that result in reasonable fear of continued breach of contract, and unreasonable delay and denial of coverage, which in and of itself, would be enough to show an injury in fact. *Friends of the Earth, Inc. v. Laidlaw Env't Servs.,* 528 U.S. 167, 1684-185 (2000).

Contract actions accrue at the moment of breach. *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1093 (10th Cir. 2014); *see also Zamora v. Prematic Serv. Corp.*, 936 F.2d 1121, 1123 (10th Cir.1991); and *Hersh Cos. Inc. v. Highline Vill. Assocs.*, 30 P.3d 221, 224 (Colo.2001) (en banc). Vista Pointe's breach of contract action accrued as early as February 25, 2015, when

Defendant wrongly rejected the proof of loss submitted, by requiring proof outside of the contractual limitations, more than 30-days after Vista Pointe had submitted its sworn proof of loss. Similarly, a claim for bad faith breach of an insurance contract accrues when "both the injury and its cause are known or should have been known by the exercise of reasonable diligence." § 13–80–108(1), C.R.S.2007; *see also Olson v. State Farm Mut. Auto. Ins*. Co., 174 P.3d 849, 853 (Colo. App. 2007); *Harmon v. Fred S. James & Co.,* 899 P.2d 258, 260 (Colo.App.1994). While the storm producing the loss was in September 2014, Vista Pointe was on notice of the injury caused by Defendant's actions by February 2015. Defendant's actions continued a pattern of unreasonable delay and denial of proper coverage that by April 29, 2016 was fully manifested into a clear, concrete injury, vis-à-vis, breach of contract, bad faith breach of contract, and violation of Colorado insurance law.

To establish breach of contract under Colorado law, a plaintiff must prove the following elements: (1) the existence of a contract; (2) plaintiff's performance or some justification for nonperformance; (3) defendant's failure to perform; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Contract interpretation is a question of law. *Ad Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000) (en banc). "The primary goal of contract interpretation is to determine and give effect to the intent of the parties." *Id.* (citing *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997)). *See Contl. Credit Corp. v. Garcia*, 15-CV-1251-NYW, 2016 WL 614475, at *4 (D. Colo. Feb. 16, 2016). Vista Pointe has properly pled all elements of a breach of contract, and a bad faith breach of contract. The Court should read the complaint in the light most favorable to the plaintiff, similar to the context of a Rule 12(b) motion to dismiss. Taking the allegations in the complaint as true

for the purposes of jurisdictional review, Vista Pointe has demonstrated a concrete injury, that occurred prior to this action being filed, that is capable of redress.

"When attempting to construe language in an insurance policy, the Court's ultimate goal is to ascertain and give effect to the reasonable expectations of the parties to the policy. The strongest indication of the parties' reasonable expectations is the policy language itself, and thus, the Court's first step is to give effect to the plain and ordinary meaning of its terms, as those terms would be understood by a person of ordinary intelligence." *Wagner v. Am. Fam. Ins.,* 968 F. Supp. 2d 1100, 1103 (D. Colo. 2013) (internal citations omitted). The Policy sets time limits for Defendant to have properly responded to and addressed the sworn proof of loss, time limits that Defendant wrongfully ignored. Under the plain and ordinary meaning of the Policy, Defendant was in clear breach of its obligations well before Vista Pointe filed this action. Even after their own engineer confirmed causation, they still delayed more than 30 days.

To state that no injury has occurred to Vista Pointe unless and until the completion of an appraisal process leads to a nonsensical result whereby insurance companies could hold their clients' claims hostage for unreasonable and exorbitant lengths of time by engaging in a pattern of delay, then invoke appraisal while the statute of limitations runs. Such a result would render Section 1115 and 1116 claims for unreasonable delay meaningless, as they would be at the mercy of the insurance company finishing the appraisal process before they could be brought. Similar to the chain of law that does not toll or delay accrual of a cause of action based upon consultation with an attorney, *see Olson v. State Farm Mut. Auto. Ins. Co.,* 174 P.3d 849 (Colo. App. 2007), the accrual of a cause of action for breach of contract should not be tolled until all possible clauses in the contract are breached. The cause of action, rather, accrues when there is knowledge of the

facts essential to the cause of action.  "First-party [breach of insurance contract] claims involve allegations by an insured that the insurer did not make, or delayed making, payments to the insured under a first-party insurance policy." *Olson v. State Farm Mut. Auto. Ins. Co.,* 174 P.3d 849, 855 (Colo. App. 2007).  Vista Pointe has appropriately made these allegations, has standing, and this Court has the appropriate diversity jurisdiction to hear these claims.

### C. Plaintiff has standing to pursue its unreasonable delay and denial of payment of covered benefits claim, (C.R.S. §§ 10-3-1115 and 10-3-1116), and this Court has jurisdiction to hear that claim

Vista Pointe asserted a claim for the unreasonable delay or denial of its claim for benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116.  The cause of action has accrued and is ripe for adjudication, and Vista Pointe has standing to bring the claim.  Colo Rev. Stat. § 10-3-1115(1)(a) provides:

> A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

Colo. Rev. Stat. § 10-3-1116(1) provides:

> A first-party claimant ... whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit.

First-party claimant" is defined in Colo. Rev. Stat. § 10-3-1115(b)(I) as "an individual ... asserting an entitlement to benefits owed directly to ... an insured under an insurance policy." Vista Pointe is a first-party claimant under the statute as it is asserting an entitlement to a benefit directly owed to it under the Policy.  Colo. Rev. Stat. § 10-3-1115(2) explains "an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."

12

Colo. Rev. Stat. § 10-3-1113(4) addresses what constitutes reasonable conduct by an insurer:

> In determining whether an insurer's delay or denial was reasonable, the jury may be instructed that willful conduct of the kind set forth in section 10-3-1104(1)(h)(I) to (1)(h)(XIV) is prohibited and may be considered if the delay or denial and the claimed injury, damage, or loss was caused by or contributed to by such prohibited conduct.

Colo. Rev. Stat. § 10-3-1104(1)(h) proscribes a variety of unfair claim settlement practices. For example, insurers may not refuse claims without conducting a reasonable investigation, *id.* § 10-3-1104(h)(IV), or fail to promptly provide a reasonable explanation for a denied claim or a settlement offer, *id.* § 10-3-1104(h)(XIV).

"The statute does not require that the insurer agree to a certain amount of damages before an unreasonable delay and denial can occur." *Etherton v. Owners Ins. Co.,* 829 F.3d 1209, 1225 (10th Cir. 2016). Delay can be found to accrue when a plaintiff is forced to pursue a statutory claim. *See Nibert v. Geico Cas. Co.,* 2017 COA 23, ¶ 36 (citing *First Citizens Bank & Tr. Co. v. Stewart Title Guar. Co.,* 2014 COA 1, ¶ 13, 320 P.3d 406). Defendant's actions in delaying even the minimal and blatantly insufficient payment they provided for nearly a year after the loss even is patently unreasonable. Defendant's action and inaction had occurred, and the cause of action under Colorado law accrued, prior to filing this action. Therefore, Vista Pointe has standing to pursue its unreasonable delay and denial of payment of covered benefits claim, (C.R.S. §§ 10-3-1115 and 10-3-1116). The Court should retain jurisdiction over the claims for violation of Colorado law.

### D. Appraisal should not be equated to arbitration, and not used as a tool to divest this Court of its jurisdiction

Finally, Vista Pointe has not suggested and does not suggest that appraisal is arbitration. Indeed, the two systems are not analogous and should not be equated. Arbitration has the ability to fully adjudicate the dispute between the parties. Appraisal does not do that. The appraisal process set forth in the policy is not an arbitration under the CUAA. *See Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F. Supp. 3d 1150, 1153 (D. Colo. 2015). "[T]he parties' dispute will not be settled through to completion because there will still be legal issues for the Court to resolve." *Id.*

Determinatively, "appraisal establishes only the amount of a loss and not liability for the loss under the insurance contract," whereas "arbitration is a quasi-judicial proceeding that ordinarily will decide the entire controversy." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F. Supp. 3d 1150, 1153-1154 (D. Colo. 2015) (citing *Minot Town & Country v. Fireman's Fund Ins. Co.*, 587 N.W.2d 189, 190 (N.D.1998); *see also* *1154 *Portland Gen. Elec. Co. v. U.S. Bank Trust Nat. Ass'n as Tr. for Trust No. 1*, 218 F.3d 1085, 1090 (9th Cir.2000) (noting that, while "arbitration agreements permit arbitrators to resolve pending disputes between the parties and to determine ultimate liability, generally through adversary hearings at which evidence is admitted and the arbitrator plays a quasi-judicial role," appraisal agreements provide for the "submission of isolated issues to an appraiser" and do not "usurp the judiciary's power to resolve the case as a whole")).

Simply put, appraisal is merely a tool to determine the amount of the loss, which can then be evidence that the contract was or was not breached. There are two ways that damages can be

established in a suit on an insurance contract: (1) traditional litigation where the disputed fact (amount of the loss) is submitted to the jury for binding resolution; or (2) appraisal is invoked to submit the dispute to the appraisal process, ideally saving the parties and the courts the time and expense of litigating that issue. The function is essentially a bifurcation of the issues of damages and liability, with damages being decided by the appraisal process and liability established by the Court. An appraisal award in and of itself is not conclusive proof of a breach of contract, nor is it conclusive proof of an unreasonable delay/denial. It is instead *evidence* of those things to be used by the parties at trial. The policy provides for appraisal to bind the parties to the amount of the loss and nothing more.

Appraisal is not a condition precedent to suit under the insurance contract. This is evidenced by the fact that if there is a disagreement either party "may" make written demand for an appraisal of the loss, but it is not required. The policy contains no language establishing appraisal as a condition precedent to suit, but instead provides it as an alternative means of establishing the "amount of the loss."  Similar to the fact that an insured motorist's continued receipt of benefits, such as personal injury protection, does not extend accrual of a breach of contract claim, *see Nelson v. State Farm Mut. Auto. Ins. Co.,* 419 F.3d 1117, 1121 (10th Cir. 2005), nor should use of a mechanism within the insurance policy for determining damages extend accrual of the breach of contract claim.  It is not error for a plaintiff to timely make a claim for breach of contract, while still seeking to enforce part of the contract that provides a measure for ascertaining damages, should liability be established.

Defendant's behavior after Vista Pointe filed suit, such as the result of any attempt at the umpired appraisal processes, will not be evidence stating a new cause of action, nor will it change

the theory of the claim or cure a defective pleading. Defendant's current conduct "is instead merely a continuation of the same difficulties that preceded the filing of the complaint." *Rabin v. Fidelity Nat. Property and Cas. Ins. Co.,* 863 F.Supp.2d 1107 (D. Colorado 2012) (internal citations omitted). Defendant's conduct is therefore relevant as evidence of "habitual pattern of dealing with" Vista Pointe, but does not ameliorate their earlier breach of contract so as to make the claim unripe at the time of filing. Finally, appraisal may well produce certain binding factual determinations, but it will not resolve this case "through to completion". *Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.,* 390 F.3d 684, 689 (10th Cir. 2004). In fact, the Policy favors Defendant saying: "If there is an appraisal, we will still retain our right to deny the claim." [D.E. 19-4 at 2]. Therefore, the Court should not allow invocation of the appraisal process to muddy the jurisdictional waters and provide a way to divest the Court of its inherent subject matter jurisdiction in this action.

Lastly, the Court appears to have concerns about involving itself in the appraisal process, and that it "did not invite or accept this duty." Vista Pointe would direct the Court to the *Summit Park* decision, where it details how courts are regularly involved in governing the appraisal process in insurance contracts, and that such involvement is a necessary and valuable duty of the court to provide:

> [T]he Colorado Supreme Court has recognized that certain protections, including the right to notice and a hearing, apply to appraisal proceedings. *See Providence Wash. Ins. Co. v. Gulinson,* 73 Colo. 282, 215 P. 154, 155 (1923) (vacating appraisal award made by appraiser and umpire where other appraiser was not given notice of meeting at which award was made); *St. Paul Fire & Marine Ins. Co. v. Walsenburg Land & Dev. Co.,* 86 Colo. 72, 278 P. 602, 602–03 (1929) (voiding appraisal where insured was denied right to "appear before the appraisers" and "be heard"). **The guidelines I impose will protect the integrity of the process and increase the likelihood of a valid appraisal award**. Finally, the Court has the

responsibility and the inherent power "to control and supervise its own proceedings." *See United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir.1986). **Imposing guidelines will allow the appraisal process to proceed in an orderly and efficient manner that conserves the Court's resources and minimizes the need for further involvement of the Court**.

Courts regularly impose guidelines similar to those below to govern appraisal processes in insurance contracts. *See, e.g., Am. Storage Centers v. Safeco Ins. Co. of Am.*, 651 F.Supp.2d 718, 720 (N.D. Ohio 2009) (noting the court's "lengthy Order which contained instructions for the conduct of the appraisal process"); *CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F.Supp.2d 259, 275 (D.Del.2000) (ordering that "[t]he appraisers shall make determinations as to the following" and including a list of issues to be addressed, such as "the amount of loss to clean up and remove asbestos containing materials and/or asbestos fibers as a result of the fire"); *see also Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.*, 981 F.Supp. 581, 607 (N.D. Iowa 1997) (**permitting parties to "move the court for a determination" in the event "intractable disputes arise over what issues are properly within the scope of appraisal"**).

*Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F. Supp. 3d 1150, 1155–56 (D. Colo. 2015) (emphasis added).

The policy itself calls for the selection of an umpire by the Court if the parties cannot agree[25]:

> **2. Appraisal**
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. ==The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.== The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

---

[25] D.E. 28 at 2 (*emphasis added*).

Vista Pointe would therefore, once again, ask the Court to assist the parties in moving the appraisal forward in an orderly and efficient manner.[26] Appraisal is a tool, both for the parties, and the Court, to make resolution of this action less burdensome on the system. However, with or without the appraisal process, this dispute is ripe for consideration, and Vista Pointe will prove Defendant's breach of contract, bad faith breach of contract, and breach of Colorado insurance law upon final adjudication of the matter.

### E. In the alternative, Plaintiff requests the right to file an amended complaint

During the June 9, 2016, Rule 16 Hearing, the Court expressed some initial concerns regarding jurisdiction. However, the Court retained the case at that time. Specifically, the Court indicated should the case be reconvened, and the claims as pled examined, that at that point it may be appropriate for the complaint to be amended. This Court granted leave to file an amendment for the purpose of clarifying and adducing additional jurisdictional facts as necessary. [Reporter's Transcript, Rule 11 Hearing, June 9, 2016, 8:10-15]. Therefore, to the extent the Court believes this response to the Show Cause Order does not fully address and resolve its concerns, Vista Pointe respectfully requests the opportunity to amended its complaint, pursuant to the Court's previous statement.

## CONCLUSION

Vista Pointe prays that the Court upon review of this response, the pleadings, and the exhibits thereto, will find its jurisdiction and retain this action upon its docket. In the alternate,

---

[26] The Court's Minute Order specifically stated the case may be reopened "if before the passage of 90 days, there is a request to appoint an umpire under the appraisal provision of your contract." [D.E. 18].

Vista Pointe prays for the Court to allow Vista Pointe to file an amended complaint regarding jurisdictional facts pursuant to its bench ruling on June 9, 2016.

Respectfully submitted this 6th day of November 2017:

By: */s/ Robert D. Green*
Robert D. Green, #46875
**ROBERT D. GREEN & ASSOCIATES, P.C.**
440 Louisiana Street, Ste. 1930
Houston, Texas 77002
(713) 654-9222
(713) 654-2155 (Fax)
green@greentriallaw.com
*Co-Lead Counsel for Plaintiff*

By: */s/ Daniel P. Barton*
Daniel P. Barton, #49297
**BARTON LAW FIRM**
1201 Shepherd Drive
Houston, Texas 77007
(713) 227-4747
(713) 621-5900 (Fax)
dbarton@bartonlawgroup.com
*Co-Lead Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 6, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel:

Terence M. Ridley
Evan Bennett Stephenson
Grace A. Fox
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-5647

*/s/ Robert D. Green*
ROBERT D. GREEN