IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-CV-0973-MSK-NYW

**VISTA POINTE TOWNHOME ASSOCIATION INC.**,

 Plaintiff,

*v*.

**AUTO-OWNERS INSURANCE CO.**,

 Defendant.

**OPINION AND ORDER ON THE PLAINTIFF'S STANDING TO BRING SUIT**

 **THIS MATTER** comes before the Court upon the Court's Order to Show Cause **(#34)** as to why this case should not be dismissed to lack of subject-matter jurisdiction and Responses thereto **(## 35,36)**. For the reasons that follow, the Court concludes that the Plaintiff has standing to bring some, but not all, of its claims.

## I. BACKGROUND

 This case arises from a hail storm that occurred in 2014, damaging the Plaintiff's ("Vista Pointe") property. Vista Pointe filed a claim with its insurer, Defendant Auto-Owners Insurance Co. ("Owners"). Owners determined that at least part of the claimed loss was covered by the insurance policy ("the Policy") and paid a portion of the amount claimed by Vista Pointe. The Policy provided that disputes over the value of a claim could be resolved via an "appraisal" process, and Vista Pointe invoked that process. Pursuant to that process, Vista Pointe and Owners each designated an "impartial appraiser" to present their claims, with the expectation that the two appraisers would then appoint a third-party "umpire" whose valuation of the claim

1

would be binding. However, Owners disputed whether Vista Pointe designated appraiser was truly impartial, the parties reached impasse over that issue, and Vista Pointe filed this action.

In its Complaint (**# 1**), Vista Pointe asserts three causes of action: (1) a claim for breach of contract, apparently under Colorado law, in that Owners failed to pay the full amount of benefits called for under the Policy; (2) bad faith breach of insurance contract, apparently under Colorado common law, in that Owners failed to reasonably investigate Vista Pointe's claim, failed to promptly offer and pay the full amount of the claim, and compelled Vista Pointe to initiate litigation, among other things; and (3) unreasonable delay and denial of benefits in violation of C.R.S. § 10-3-1115 and -1116. The Complaint also purports to be a "Motion to Stay and Compel," requesting that the Court stay the newly-filed lawsuit and compel Owners to accept Vista Pointe's chosen appraiser and to thereafter proceed with the appraisal process.

Three provisions in the Policy are pertinent to the issue of Vista Pointe's standing in this case. First, the Policy's "Commercial Property Conditions" section states:

> **Legal action against us**
>
> No one may bring a legal action against us [Owners] under this Coverage part unless:
>
> 1. There has been full compliance with all of the terms of this Coverage Part; and
>
> 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(**# 36-2 at 113**) (the "Action clause")

Second, the terms of the "Commercial Property Conditions" of the Policy expressly incorporate the Provisions of the "Loss Conditions" section of the Policy. These provisions dictate when Owners is required to make a payment for a covered loss:

>       We will pay for covered loss or damage within 30 days after we
>       receive the sworn proof of loss, if:
>
>               (1) You [Vista Point] have complied with all of the terms
>       of this Coverage Part; and
>
>               (2)     (a) We have reached agreement with you on the
>       amount of loss; or
>
>                       (b) An appraisal award has been made.

**(# 36-2 at 122)** (the "Payment clause").

Third, if there is a disagreement as to the amount of loss, either party can invoke an appraisal process:

>       If we and you disagree on the value of the property or the amount
>       of loss, either may make written demand for an appraisal of the
>       loss.  In this event, each party will select a competent and impartial
>       appraiser.  The two appraisers will select an umpire.  If they cannot
>       agree, either may request that selection be made by a judge of a
>       court having jurisdiction.  The appraisers will state separately the
>       value of the property and amount of loss.  If they fail to agree, they
>       will submit their differences to the umpire.  A decision agreed to
>       by any two will be binding.
>
>                               *****
>       If there is an appraisal, we will still retain our right to deny the
>       claim.

**(# 36-2 at 120)** (the "Appraisal clause").

Shortly after Vista Pointe commenced this action, the Court *sua sponte* raised concerns that the suit was premature, as it appeared that completion of the appraisal process was a condition precedent to Owner's obligation to pay and Vista Pointe's right to bring suit. At a hearing in April 2016, the parties agreed to administratively close the case pending completion of the appraisal process (**# 18**). The parties then entered into a new contract, referred to as an "Appraisal Agreement," that would govern how the parties would carry out the appraisal

3

process. Among other things, the Appraisal Agreement substantially expanded the description of the appraisal process, but it was not made an amendment to the Policy.

In September 2016, Owners moved to reopen the case and to disqualify Vista Pointe's appraiser (**## 19**, **20**). The Court found **(# 27)** that it lacked jurisdiction to rule on the motion to disqualify Vista Pointe's appraiser because it was premised upon the terms of the Appraisal Agreement, which had been entered into during the pendency of this lawsuit but, according to the parties, it did not amend or modify the terms of the Policy. The Court invited a motion for reconsideration if Owners could find authority indicating that the Court could exercise jurisdiction over a contract unrelated to the Policy, but none was filed.

Vista Pointe then requested that the Court reopen the case to appoint an umpire because the parties' appraisers disagreed over who should be selected as an umpire. (**# 28**). Owners argued that Vista Pointe's appraiser agreed to an umpire; Vista Pointe asserts that its appraiser withdrew his consent. The Court again raised its concerns about Vista Pointe's standing, repeating its understanding that according the express terms of the Policy, invocation of the appraisal process created a condition precedent to performance under the contract. Ultimately, the Court ordered the parties to show cause **(# 34)** as to why this case should not be dismissed for lack of standing.

Vista Pointe responded to that order, pointing to a number of alleged breaches of the Policy that it contended gave it standing to sue: 1) Owners refusal to pay the full amount of the proof of loss; 2) Owners taking more than 30 days to render a decision on the claim; and 3) Owners required Vista Point to submit information in support of its claimed loss when such information was not required by the Policy. Vista Pointe argued that, if it suffered no injury prior to filing this suit, insurers could hold claims hostage for unreasonable lengths of time and

then invoke appraisal after the Policy's limitation period ran.  Additionally, Vista Pointe asserts that it suffered an injury because Owners took too long to process the claim, only to provide an insufficient payment without any reasonable basis.  Vista Pointe also contends that the appraisal process is not a condition precedent to the Policy because it is permissive and not mandatory.  Lastly, Vista Pointe maintains that the Court may freely govern the appraisal process by imposing guidelines as contemplated by the Policy, citing to *Auto-Owners Insurance Co. v. Summit Park Townhome Ass'n*, 129 F. Supp. 3d 1150, 1155–56 (D. Colo. 2015).

## II.  DISCUSSION

### A.  **Standing in Federal Courts**

As the Court explained in its Order to Show Cause, federal courts are courts of limited jurisdiction,[1] possessing only the authority given to them by the United States Constitution and federal statutes.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Article III of the Constitution restricts the authority of federal courts to adjudicating actual "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1; *Sprint Commc'ns Co. v. APCC Servs. Inc.*, 554 U.S. 269 (2008).  The question of standing focuses on the party who seeks relief, rather than on the issues that he or she wants adjudicated.  *See Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Agreements between the parties as to standing or a court's jurisdiction do not create it.  *Wilson v. Glenwood Intermountain Properties, Inc.*, 96F.3d 590, 593 (10th Cir. 1996).

For each claim, a plaintiff must show that there was a "case or controversy" at the time of filing of the lawsuit.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  In this case, for each claim it asserts, Vista Pointe must demonstrate that, as of the commencement of the suit in April 2016: (1) it <u>had</u> suffered an "injury in fact" that is concrete, particularized and actual or

---

[1]     This is in contrast to state courts.  Typically courts of general jurisdiction, state courts are presumed to have the authority to hear <u>any</u> claim arising under federal or state law, except those which Congress or the United States Constitution specifies can be heard only by federal courts.

imminent (not merely conjectural or hypothetical); (2) that the injury is fairly traceable to the challenged action of Owners; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Friends of the Earth Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 180–81 (2000); *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir.2004); *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005). The Court turns to each claim in turn.

### B. Claim I - Breach of Contract

Vista Pointe's first claim for relief is for breach of contract – specifically, breach of the terms of the Policy. Under Colorado law, a claim for breach of contract requires proof of the following elements: (i) that an enforceable contract existed between the parties; (ii) that the plaintiff fully performed its obligations under the contract or that its performance was excused; (iii) that the defendant breached its obligations under the contract; (iv) that the plaintiff suffered an injury caused by the defendant's breach. *Western Distributing Co. v. Diodosio*, 841 P.3d 1053, 1058 (Colo. 1992). It is undisputed that the parties' agree that an enforceable contract – the Policy – exists.

Before turning to the remaining elements, it is necessary to parse the terms of the Policy. Colorado law requires that the Court construe the terms of a contract according to their ordinary language (absent a showing that the parties jointly intended the language to have a different meaning). *Ace American Ins. Co. v. Dish Network, LLC*, 883 F.3d 881, 887 (10th Cir. 2018).

The Court begins with the Payment clause, which has two components. That clause states that Owners is obligated to make payment only when two criteria are met. The first requirement is that Vista Point has "complied with all of the terms of the Coverage Part". The second requirement is that the value of the claimed loss has been conclusively quantified, either

because the parties agree as to the amount or an amount has been determined through the appraisal process.[2]  It is clear that, as of the filing of this action, the parties had not agreed upon the value of Vista Pointe's claimed loss, nor had they completed the appraisal process.  Thus, by all appearances, the conditions precedent to Owners' obligation to pay Vista Pointe's claim had not yet been satisfied at the time the action was commenced.  This demonstrates that, to the extent that Vista Pointe's breach of contract claim is premised upon Owners' non-payment or delayed payment of benefits, that claim is premature and Vista Pointe lacks standing to bring it.

Vista Pointe argues that to suggest that it has suffered no injury "unless and until the completion of an appraisal process leads to a nonsensical result whereby insurance companies could hold their clients' claims hostage for unreasonable and exorbitant lengths of time by engaging in a patter of delay, then invoke appraisal while the statute of limitations runs."  First, the Court notes that this is not an argument premised on the actual language of the Policy; that is, Vista Pointe is not suggesting that the Payment clause (or, arguably the Action clause) are susceptible to a different interpretation than that set forth by the Court above.  Rather, Vista Pointe seems to be arguing that interpretation of the Payment clause to require appraisal to be

---

[2]  Vista Pointe argues that appraisal is optional, and that it can address the disputed amount of its loss through "traditional litigation where the disputed fact (amount of the loss) is submitted to the jury for binding resolution," rather than participating in an appraisal.  Although the language of the Appraisal clause states that a party "may make written demand for an appraisal," that language does not trump the unambiguous language of the Payment clause, that requires a quantification of loss before Owners' payment obligations accrue.  Although the provisions might appear to be inconsistent, they can be read in harmony: where the parties cannot reach agreement on the amount of the loss, a party can choose to immediately invoke appraisal process or the party may choose to continue discussing the matter in the hopes that an agreed-upon valuation can eventually be reached.

The more difficult question arises when there is a disagreement as to the amount of loss and neither party invokes the appraisal process.   Vista Pointe may be correct that it can resort to litigation upon a declaration of breach, however, the Court need not address that scenario because it did not occur.  Instead of declaring a breach and filing suit, Vista Point invoked the appraisal process which was not complete as of the time of filing of this action.  Thus, under these facts, Vista Point chose to invoke a condition precedent to Owner's obligation to pay.

7

completed before an obligation to pay arises (and thus, a claim for breach accrues when that payment is not made) would yield an absurd result: the insurer could unreasonably delay the appraisal process until the 2-year limitations period set forth in the Action clause expired. *See EnCana Oil & Gas (USA), Inc. v. Miller*, 405 P.3d 488, 496 (Colo.App. 2017) (courts should avoid contractual interpretations that would yield "an absurd result").

The Court is not persuaded. There is nothing inherently absurd in the Court's interpretation of the Payment and Action clauses here: there is nothing inherent in the appraisal process as described that would suggest that it cannot be carried out promptly, so as not to implicate the 2-year limitation period of the Action clause. Even in the circumstances anticipated by Vista Pointe, where purposeful delay by the insurer operates the exhaust the limitation period before the loss can be appraised (and the duty to pay is breached), the law would provide remedies to Vista Pointe. Limitations periods can be equitably tolled if misconduct by a defendant causes the period to expire before the plaintiff's claims can be brought. *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004). And, if there is indeed evidence that the appraisal process could not reasonably be completed with the 2-year limitations period in the Action clause, that clause could conceivably be challenged as unconscionable and reformation requested. Ultimately, however, the Court need not reach these questions: because Vista Pointe's breach of contract claim premised on non-payment is <u>premature</u>, the question of the timeliness of that claim can await the day when the claim has matured and can be properly asserted by Vista Pointe.

Vista Pointe has identified certain other arguable breaches of the Policy by Owners that do not arise from non-payment of benefits, specifically that Owners required Vista Pointe to provide various items of information not contemplated by the Policy. Assuming, without

8

necessarily finding, that Owners failed to perform as Vista Pointe suggests, the resulting breach of contract claim is nevertheless premature because these breaches have yet to cause Vista Pointe to suffer a loss. For example, as to the contention that Owners improperly required Vista Pointe to produce, for example, an engineering or consultant report that supported its claimed loss, Vista Pointe has not alleged that it complied with those demands – *e.g.* by hiring an engineer or consultant that it would not otherwise have retained.

Accordingly, because Vista Pointe has not adequately alleged facts showing that it has a fully-accrued claim for breach of contract against Owners, it lacks standing to assert that claim and the Court dismisses it without prejudice for lack of subject-matter jurisdiction.

### B. Bad Faith Breach of Insurance Contract

A claim for common-law bad faith breach of employment contract is in the nature of a tort. *Nunn v. Mid-Century Ins. Co.*, 244P.3d 116, 121 (Colo. 2010). To state a claim for common-law bad faith breach, Vista Pointe must establish: (i) that Owners acted unreasonably in its handling of Vista Pointe's claim, (ii) that Owners did so knowingly or recklessly, (iii) that Vista Pointe suffered an injury, and (iv) the injury was caused by Owners' unreasonable conduct. Colo. Pattern Jury Instr. 25:2. The damages available for a bad faith breach are "based on traditional tort principles," even encompassing (in appropriate cases) injuries such as emotional distress. *Goodson v. American Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 416 (Colo. 2004).

Vista Pointe alleges several ways in which Owners has acted unreasonably in handling Vista Pointe's claim: (1) failing to conduct a reasonable and timely investigation of the facts; (2) failing to consider all information relevant to the claim; (3) failing to offer a reasonable amount to Vista Pointe for its losses; and (4) forcing Vista Pointe to institute litigation to recover amounts due. Assuming that these allegations are true, the Court can conceive of situations in

which Vista Pointe was injured before April 2016. For example, if Vista Pointe is correct that Owners failed to conduct an appropriate investigation into the claim, it is possible that Vista Pointe could prove that an appropriate investigation would have resulted in Owners making a full payment promptly, saving Vista Pointe time and money that it incurred pursing the claim further. Similarly, Vista Pointe incurred at least some expense in consulting with counsel prior to April 2016, in anticipation of bringing this lawsuit; such expense is an injury that existed at the time this lawsuit was filed and thus supports Vista Pointe's standing here. The Court will not attempt to ascertain <u>which</u> allegations of bad faith breach Vista Pointe has standing to pursue. It is sufficient to observe that Vista Pointe has standing to pursue at least <u>some</u> of its bad faith breach claim at this time.

**C. Third Claim for Relief – Unreasonable Delay and Denial of Payment of Covered Benefits – C. R.S. §§ 10-3-1115 and 1116**

Under C.R.S. § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial breaches the duty of good faith and fair dealing. To plead such a claim, Vista Pointe must allege facts demonstrating that: (i) Owners delayed or denied payment of benefits to it, and (ii) that delay or denial was without a reasonable basis. Colo. Pattern Jury Ins. 25:4.

A statutory claim differs from a breach of contract claim in several respects. First, this type of claim is not based upon contract language of when a payment is due. When an insurer concedes that a loss is covered, but disagrees as to the amount of the loss, the case is properly treated as one for <u>delay</u> in the payment of benefits. *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 568 (Colo. App. 2015).[3] Second, the statutory claim does not require proof of

---

[3] One might naturally infer from the preceding discussion that if Owners' obligation to pay the disputed value of Vista Pointe's claim has yet to accrue under the terms of the Payment clause in the Policy, Owners cannot be accused of violating the statute either. In other words, the statutory

10

actual loss resulting from delay or denial. Instead, C.R.S. § 10-3-1116 provides that the remedy in a liquidated sum twice the amount of coverage, plus prejudgment interest, attorney fees, and costs.

In accordance with Colorado law, the Court does not premise the duties owed by Owners' under the statute on its performance under the Policy. Because a delay in paying benefits is all that is required for the statutory claim to accrue, and it is undisputed that Owners has not yet paid the full amount claimed by Vista Pointe, the Court finds that Vista Pointe has standing to pursue its statutory delay claim.[4]

### D. Specific Performance of the Appraisal process

Finally, the Court acknowledges Vista Pointe's original request in the Complaint to compel Owners to complete the appraisal process with Vista Pointe's designated appraiser. This is essentially a request for specific performance of the Appraisal clause of the Policy. Specific performance is an equitable remedy, appropriate where there is no plain, speedy, or adequate remedy at law. *Croy v. Cobe Laboratories, Inc.*, 132 Fed.Appx. 229, 231 (10th Cir. 2005). Because it is a remedy, a request for specific performance must necessarily follow a showing that the defendant is already in breach of a contract. *See e.g. Forest City Stapleton, Inc. v. Rogers*, 393 P.3d 487, 490 (Colo. 2017) ("When parties enter into a contract, they make a series of

---

obligation to pay cannot precede the contractual obligation to do so. However, Colorado courts have rejected this argument. In *Fisher v. State Farm Mut. Auto Ins. Co.*, ___ P.3d ___, 2015 WL 2198515 (Colo.App. May 7, 2015), the court rejected the argument that "no benefits are owed [under the statute] until either the parties reach an agreement with respect to the amount of the claimant's damages or the claimant has met his or her burden of proof" on the breach of contract claim. It adopted the conclusion of *Peden v. State Farm Mut. Auto Ins. Co.*, 2014 WL 469401 (D. Colo. Sept. 22, 2014), that "the fact that the benefits owed to [the insured] is currently in dispute does not mean that [the insured's] statutory claim fails as a matter of law."

[4] The Court finds only that it is <u>possible</u> for a statutory claim to be asserted before a claim for express breach has accrued. The Court expresses no opinion as to whether Vista Pointe's statutory claim has merit. In this regard, *Fisher* is notable insofar as the insurer there refused to pay even the undisputed portion of the insured's claim. Here, Owners paid Vista Pointe that portion of the loss that both parties agreed had been incurred.

11

promises. If a party fails to perform any of these promises, a court may enforce them, either for specific performance or for a money judgment"). The Court cannot direct specific performance in the absence of a contractual breach simply because it is convenient or expedient to do so. Here, as discussed above, Vista Pointe lacks standing to bring a claim for breach of contract, because such claim is premature. It necessarily follows, then, that without a mature claim for breach of contract, Vista Pointe cannot request the remedy of specific performance of the contract.

One could argue that the Court should construe Vista Pointe's "Motion to Compel Appraisal," embedded within the Complaint, as a separate claim for breach of contract, distinct from its claim that Owners breached the Policy by failing to pay benefits. This claim, it could be argued, asserts that Owners has breached the contract by failing to comply with the Appraisal clause and the appropriate remedy for that breach would be specific performance. Even if the Court were to construe the Complaint in this way, it does not benefit Vista Pointe. The Complaint alleges that "[Owners] has agreed to appraisal but keeps objecting to Vista Pointe's selections as an appraiser. Vista Pointe seeks an Order from the Court requiring [Owners] to appraisal with George Keyes as the Vista Pointe appraiser." These allegations fail to identify any conduct by Owners that violates the terms of the Appraisal clause. That clause, once invoked, requires "each party [to] select a competent and impartial appraiser." Once that task is completed, "[t]he two appraisers will select[5] an umpire." That is all that is required of the

---

[5] The Court notes that, to the extent it would grant specific performance of the Appraisal clause, the remedy would have to be directed to <u>the appraisers</u>, who would be directed to select an umpire. The appraisers are not parties herein, nor is it clear that the Court has jurisdiction to compel them to take any action.
    The Court also notes that the Policy provides that if the appraisers cannot agree on an umpire, "either" – that is, either <u>appraiser</u> – "may request that selection be made by a judge of a court having jurisdiction." Putting aside the fact that neither appraiser is a party herein, this Court has profound doubts that it would possess jurisdiction to select an umpire simply because

12

parties, and there is no allegation that Owners has refused to designate its own appraiser (nor that its appraiser has refused to select an umpire). The Complaint alleges only that Owners "keeps objecting" to Vista Pointe's selected appraiser. It is not clear how such "object[ions]" have prevented the appraisers from carrying out the remaining obligations of the Appraisal clause. Indeed, insofar as the Appraisal clause does not even contemplate "objections," it does not appear that Owners' objections have any legal effect whatsoever.[6] Thus, the Court cannot say that Vista Pointe has adequately pled any breach of contract claim arising from Owners' implementation of the Appraisal clause, and thus, there is no basis for the Court to consider a remedy compelling Owners "to appraisal."

The Court acknowledges the sort of "chicken-and-egg" dilemma Vista Pointe faces: its breach of contract claims are premature because an appraisal has not yet occurred, but the Court will not compel an appraisal because there is no breach of contract claim for which specific performance of appraisal would be proper. But that dilemma is not insurmountable. Vista

---

the parties disagree. As noted above, parties may not create federal jurisdiction simply be agreeing that it should exist. Nor would either party be in ostensible breach of the Appraisal clause simply because the appraisers could not agree on an umpire, such that the Court would have standing to adjudicate a claim for breach. At best, it would seem that a request for appointment of an umpire would have to be made to a court of general jurisdiction – *e.g.* a state court.

In this regard, to the extent that *Auto-Owners Ins. Co. v. Summit Park Townhome Assn.*, 129 F.Supp.3d 1150, 1157 (D.Colo. 2015), suggests that the court was prepared to appoint an umpire at the parties' request, this Court finds it unpersuasive. There, the court does not appear to have even considered the basis for its jurisdiction to make such an appointment.

[6]    Perhaps it might be appropriate to read Owners' "objections" as simply a warning: that Owners will seek to nullify (or simply ignore) any appraisal that is issued by an appraiser that it deems improperly "partial." In such circumstances, it is up to Vista Pointe to consider and evaluate Owners' objections, to consider the costs and benefits of proceeding with an appraisal that might eventually be nullified, and either elect to appoint a different appraiser or decide to proceed with its allegedly-partial appraiser and hope to successfully defend the ultimate appraisal award.

The Court is also compelled to note that, although Vista Pointe complains of Owners' dilatory "objections" to its designated appraiser, Vista Point has filed **(# 32)** its own "Objection to Defendant's Appraiser."

Pointe's statutory bad faith claim is proceeding and, if successful, would ensure that Vista Pointe receives <u>twice</u> the value of the unpaid benefits it seeks under the breach of contract claim. Moreover, as noted herein, Vista Pointe possesses the power to advance the appraisal process to its conclusion, Owners' "objections" notwithstanding. Accordingly, the Court denies Vista Pointe's request for an order compelling appraisal.

### III.  CONCLUSION

It is therefore ordered that:

1) The Clerk of the Court shall reopen this case.[7]

2) Vista Pointe's first claim for relief, sounding in breach of contract, is dismissed without prejudice for lack of subject-matter jurisdiction. Vista Pointe's claims for common-law bad faith breach and statutory bad faith shall proceed, and Owners shall file an Answer or response to those claims within 21 days of this Order.

3) Vista Pointe's Motion to Compel (found in the Complaint **(# 1)**, and its Motion to Appoint an Umpire (found in Docket **# 31)** are denied.

Dated this 13th day of April, 2018.

**BY THE COURT:**

*Marcia S. Krieger*
_____
Marcia S. Krieger
Chief United States District Judge

---

[7]  The Court previously ordered the reopening of the case at Docket # 34. It appears that the case still bears the "TERMED" flag and not the "REOPEN" flag.